Norman J. HAYES, Appellant
(Defendant),

v.

PRODUCTION CREDIT ASSOCIATION
OF THE MIDLANDS,
Appellee (Plaintiff).

No. 90–211.

Supreme Court of Wyoming.

June 27, 1991.

B.J. Baker of Brown & Drew, Casper, for appellant.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

In this case, we decide whether a writ of ejectment was merged into and superseded by the subsequent lease/purchase agreement that appellant, Norman J. Hayes (Hayes), entered into with appellee, Production Credit Association of the Midlands (PCA).

Hayes contends that the writ of ejectment was fully executed and satisfied when he acquiesced in the writ and entered into a lease/purchase agreement with PCA which permitted him to retain possession of the property. He also contends that the district court wrongfully enforced the prior writ of ejectment as a reused device to once again evict him from that property when he defaulted on the lease/purchase agreement. Finally, he contends the district court could not hold him in contempt for failure to abide by the reused writ of ejectment, after the writ had been fully satisfied by the agreement which he and PCA made for him to retain possession under a written lease/purchase agreement following the earlier mortgage foreclosure and his loss of title.

We reverse and remand.

The facts of this case are not complicated but, in order to address the issues in a context that promotes understanding, we shall briefly relate the rather lengthy history of dealings between Hayes and PCA. Hayes first borrowed approximately $1.8 million from PCA in June 1979. For several years, Hayes managed to stay current on the loan at least to the extent of paying interest. However, in 1983, it was necessary for Hayes to seek protection in the

bankruptcy court and he filed for a Chapter 11 reorganization. One result of the bankruptcy proceeding was to place deeds to much of the property at issue in this case in escrow, with those deeds passing to PCA should Hayes default on his payments to PCA. In 1986, such a default occurred and the deeds were recorded in favor of PCA. In a separate proceeding, title to these lands was quieted in PCA. However, Hayes continued to occupy and make use of the land.

Then came these proceedings which are immediately relevant to the resolution of this controversy. On September 12, 1986, PCA filed a petition and complaint for ejectment seeking to remove Hayes from the property. There were almost continuous negotiations between PCA and Hayes during the pendency of this action, negotiations that were designed to find a way to work out a deal so that Hayes could remain on the property. In addition, the proceedings were delayed by some six months pending resolution of Hayes's motion to dismiss which was premised on ongoing litigation in the bankruptcy court. In August of 1987, the case was continued indefinitely. A judgment and decree of ejectment was finally issued from the district court on November 30, 1988. No appeal was taken by Hayes, but he continued to occupy the property. During the ensuing months, negotiations between Hayes and PCA continued. On May 12, 1989, Hayes and PCA entered into a lease agreement with option to purchase and, thus, the judgment and decree of ejectment was not subjected to physical enforcement by the sheriff. Hayes next defaulted on the lease/purchase agreement by failing to make the required cash payments that were due under that agreement. On March 12, 1990, PCA caused a writ of possession to be issued which was based upon the judgment and decree of ejectment of November 30, 1988. Hayes sought to quash the writ of possession, but his motion was denied by order entered on July 23, 1990. Hayes timely filed a notice of appeal from that order. On August 23, 1990, the district court found Hayes to be in contempt of court for willfully refusing to obey the judgment and decree of ejectment of November 30, 1988 and the writ of possession issued on March 12, 1990. The district court fined Hayes the sum of $1,000.00. Hayes also appeals the order finding him in contempt.

■ We hold that the lease/purchase agreement entered into by Hayes and PCA was a voluntary settlement of the litigation in this case and operated to extinguish the judgment and decree of ejectment of November 30, 1988. There being no judgment in existence in August of 1990, the district court could not properly find Hayes in contempt for failure to abide by the judgment or the writ of possession issued pursuant to it. " 'When a judgment is made part of a settlement agreement, it is merged in and superseded by the settlement agreement, and is thereafter extinguished.' " *Van Schaack Holdings, Ltd. v. Fulenwider,* 798 P.2d 424, 431 (Colo.1990) (quoting *Van Schaack Holdings, Ltd. v. Fulenwider,* 768 P.2d 740, 743 (Colo.App.1988)). *See Eagle Oil Co. v. Sinclair Prairie Oil Co.,* 105 F.2d 710, 713 (10th Cir.1939); *Young By and Through Young v. Carpenter,* 757 P.2d 148, 150 (1988), *rev'd* 773 P.2d 561, 568–69 (Colo.1989); *Elwert v. Marley,* 53 Or. 591, 101 P. 671 (1909); *Elwert v. Marley,* 53 Or. 591, 99 P. 887 (1909); 15A Am.Jur.2d *Compromise and Settlement,* § 24 (1976); and 25 Am.Jur.2d *Ejectment,* §§ 138 and 140 (1966)). Here, it is quite clear that Hayes fully acquiesced in the ejectment and recognized without limitation the ownership of PCA. The lease/purchase agreement is, of course, in writing and it placed Hayes back in possession in a legal sense (in reality Hayes never left the property until fairly recently). PCA's remedy must now be premised on the terms of the lease/purchase agreement and pertinent statutes. PCA cannot look to the November 30, 1988 judgment for a further remedy.

■ Finally, because we hold the November 30, 1988 judgment was extinguished by the lease/purchase agreement, *Eagle Oil Co.,* 105 F.2d 710, it is simply a matter of common sense that the district court could not have issued a writ of possession pursuant to that judgment. With

only the factual difference that the legal proceedings did not involve a contempt citation, an almost identical factual situation was presented in *Elwert*, 101 P. 671, where that court found a new relationship was created with the entry into a lease after the actual right of possession had been judicially acquired by the other party. The *Elwert* court recognized that with the new status, "[t]o obtain possession [the prior ejectment judgment beneficiary] would be compelled to resort to a new and independent proceeding." *Id.* at 671. It follows, quite logically, that the district court could not have found Hayes in contempt for failure to abide by an extinguished judgment and an invalid writ of possession.

Not only is this decision supported by common sense, but a preclusive volume of precedent defining the basic principle that a court requires jurisdiction before its inherent or statutorily granted power of contempt can be employed. *Ex parte George*, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133 (1962). *See* Annotation, *Right to Punish for Contempt for Failure to Obey Court Order or Decree Either Beyond Power or Jurisdiction of Court or Merely Erroneous*, 12 A.L.R.2d 1059 (1950) and numerous cases therein cited. This basic principle in specific application has only recently been restated and employed by this court. Subject matter jurisdiction is required for issuance of an enforceable contempt citation as the exercise of judicial power. *United Mine Workers of America, Local 1972 v. Decker Coal Co.*, 774 P.2d 1274 (Wyo. 1989); *Matter of Contempt Order Issued Against Anderson*, 765 P.2d 933, 936 (Wyo.1988); *State v. Crenshaw*, 307 Or. 160, 764 P.2d 1372 (1988).

Therefore, we reverse and direct that the writ of possession be quashed. In addition, we vacate the district court's order finding Hayes in contempt and fining him $1,000.00.

Reversed and remanded to the district court for further proceedings consistent with this opinion.