**SMITTY'S SUPER MARKETS, INC.,
Plaintiff-Respondent-Appellant,**

v.

**RETAIL STORE EMPLOYEES LOCAL 322, et al.,
Defendants-Appellants-Respondents.**

**Nos. 12014, 12022.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 1, 1982.

Motion for Transfer to the Court En Banc and Rehearing by the Court En Banc Denied
June 22, 1982.

Application to Transfer Denied
Sept. 13, 1982.

Donald W. Jones, Jones, Keeter, Karchmer, Nelms & Sullivan, Springfield, for plaintiff-respondent-appellant.

Benjamin J. Francka, M. Susan Appelquist, Springfield, for defendants-appellants-respondents.

· MAUS, Chief Judge.

This action has had a long and tortuous history. The petition was filed on September 20, 1977. Insofar as it is pertinent to these appeals, the petition sought a temporary restraining order, a temporary injunction and a permanent injunction restraining the defendants from (1) using false and misleading statements; (2) threats of physical violence, mass picketing, harassment, name calling, or other intimidations directed at the plaintiff's potential customers; and (3) trespassing upon the plaintiff's premises. A temporary restraining order was issued and a show cause hearing was set for the following day. This was soon followed by a removal to a Federal Court, which in turn was followed by a remand to the Circuit Court of Greene County. After remand, the Circuit Court held a series of hearings preceding a temporary injunction, and thereafter a further series of hearings as a basis for the final judgment in the case.

As a result of those hearings, the trial court, as a basis for its judgment, made extensive and thorough findings of fact. These findings included the following determinations that are appropriately set forth at this point.

The plaintiff owned and operated a supermarket at 218 S. Glenstone in Springfield. It was admittedly subject to the National Labor Relations Act (N.L.R.A.). 29 U.S.C.S. §§ 151–168. The supermarket was served by a large parking lot in front of the building in which the business was conducted. Glenstone, a public thoroughfare, adjoined that parking lot on the west. The defendant union did not represent or seek to organize the employees of the plaintiff. The placard carried during the sporadic picketing conducted by the defendants in general advised the public the plaintiff did not have a contract with the defendant union and asked the public to withhold their patronage. The basis for the union's activities was that the plaintiff paid substandard wages and the picketing was for the purpose of maintaining area standards. Initially, the picketing was on the right-of-way of Glenstone. However, in September, 1979, there was picketing on the premises of the plaintiff on a sidewalk in front of the building. After a trespassing complaint was made to the police department, the picketing returned to the right-of-way. The union then filed a charge in case No. 17–CA–9187 before the National Labor Relations Board (N.L.R.B.). This charge resulted in a complaint being issued alleging

that the plaintiff by ordering defendants from the premises committed an unfair labor practice within the meaning of § 8(a)(1) of the N.L.R.A. At the time the trial court entered its final judgment, a hearing had been held upon that complaint, but no decision had been rendered.

From this brief outline of the facts, it is apparent the principal issue in this case is whether or not the N.L.R.A. has deprived the circuit court of the authority to enjoin trespass picketing by the defendants. The trial court as part of a proposed judgment carefully and ably analyzed the myriad of federal decisions dealing with the subject. That court in the proposed judgment initially followed the concurring opinion of Justice Powell in *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) and held that even though the charge referred to above had been filed with the N.L.R.B., the N.L.R.A. did not deprive the circuit court of that authority. However, before the proposed judgment was entered, the Eastern District of this Court adopted *State ex rel. Retail Store Emp. v. Black*, 603 S.W.2d 676 (Mo. App.1980). In that decision, the court held that after the union had filed a charge with the N.L.R.B. and a complaint had been issued, the circuit court had no authority to issue an order restraining trespass picketing. Thereby the Eastern District adopted the concurring opinion of Justice Blackmun in *Sears*.

When the final judgment in this case was entered, the trial court determined that it was bound to follow *Black* and did not enjoin the defendants from trespass picketing. The final judgment did enjoin the defendants from (1) parking motor vehicles on the parking lot while engaged in picketing; (2) using any false or misleading statements wrongfully disparaging the plaintiff in connection with its business in Springfield, Missouri, and in connection therewith from stating or implying that the plaintiff is not a Missouri corporation located in Springfield; (3) using any threat of physical violence, mass picketing, harassment, name calling or other intimidation directed at plaintiff's potential customers; (4) and

from picketing inside the plaintiff's building and from picketing outside the building in such a manner as to block, hinder, slow or impede the free passage of customers and their vehicles. Both parties appeal from that final judgment. .

 Before reaching the merits of these appeals, an evidentiary question must be resolved. It is undisputed that after the circuit court entered its final judgment the Administrative Law Judge who heard the complaint referred to above issued a decision. Plaintiff has attached a copy of that decision to its brief and asked this court to take judicial notice thereof. With few exceptions, the record before this court is limited to the record before the trial court. *Collins v. Vernon*, 512 S.W.2d 470 (Mo.App. 1974). However, this court does have the power, within limitations that need not now be discussed, to take judicial notice of certain facts and evidence. *Brooks v. Club Exchange Corporation*, 356 S.W.2d 555 (Mo. App.1962). This includes some events occurring after the appeal has been taken. *Koch v. Board of Regents*, 265 S.W.2d 421 (Mo.App.1954). It has been appropriately observed "there may be cases so closely interwoven, or so clearly interdependent as to invoke a rule of judicial notice in one suit of the proceedings of another suit". *Knorp v. Thompson*, 352 Mo. 44, 52, 175 S.W.2d 889, 894 (1943). Also see *State ex rel. St. Louis Public Service Company v. Public Service Commission*, 365 Mo. 1032, 291 S.W.2d 95 (banc 1956); *Collins v. Indus. Bear. & Transmission Co.*, 575 S.W.2d 875 (Mo.App.1978); *Phelps v. Cape Girardeau Waterwork & Electric L. Co.*, 165 Mo.App. 454, 147 S.W. 130 (1912). Accordingly, this court does take judicial notice of the interwoven and interdependent decision of the Administrative Law Judge. *May Dept. Stores v. Teamsters Union Local No. 743*, 64 Ill.2d 153, 355 N.E.2d 7 (1976); *Florida Gulf Coast Bldg. Trades v. DeBartolo*, 392 So.2d 916 (Fla.App.1980).

In that decision, after an exhaustive analysis of the facts and the law, the Administrative Law Judge concluded he could not

"find in favor of the Union's right to picket on the Respondent's private property". He found the plaintiff had not committed an unfair labor practice when it ordered the pickets from its property. The complaint was dismissed.

The relationship between the N.L. R.B. and state courts has been the subject of countless decisions. Two facets are involved in that relationship. One facet is the authority to regulate activities that come within the purview of the N.L.R.A. The other is the authority to determine in the first instance whether or not a given activity comes within the purview of that act. The distinction between the two facets is not always recognized. When applicable, the N.L.R.A. is superior to the state law dealing with the same subject. *Sears.* To the extent required by that act, the regulatory authority of the N.L.R.B. is superior to the authority of the courts. *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).[1] The ultimate boundaries of this superior authority must be found in the decisions of the Supreme Court of the United States. While the terminology is somewhat misleading, that superiority of authority is often expressed in the terms of the jurisdiction of the N.L.R.B. having pre-empted the jurisdiction of the courts.[2] It is beyond the scope of this opinion to trace the history of the judicial delineation of the superior authority of the N.L.R.B. or to explore the details of that superiority. A general statement of that superior authority has been set forth as follows: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the

danger of state interference with national policy is to be averted."[3] *Garmon,* 359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783. However, that same case recognized that this general boundary would be subject to exceptions.

[D]ue regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. ... Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act. *Garmon,* 359 U.S. at 243–244, 79 S.Ct. at 779, 3 L.Ed.2d at 782.

That language has been the basis for the recognition of exceptions whereby the courts are permitted to regulate conduct even though certain aspects thereof may fall within the jurisdiction of the N.L.R.B.

[T]he Court has allowed a State to enforce certain laws of general applicability even though aspects of the challenged conduct were arguably prohibited by § 8 of the NLRA. Thus, for example, the Court has upheld state-court jurisdiction over conduct that touches 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.' *San Diego Building Trades Council v. Garmon,* 359 US, at 244, 3 L.Ed.2d 775, 79 S.Ct. 773. See

1. "Pre-emption of state law by federal statute or regulation is not favored ...". *Chicago & N. W. Tr. Co. v. Kalo Brick & Tile,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258, 265 (1981).

2. For a discussion of the "primary jurisdiction" of the N.L.R.B. see *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209, 226 (1978); Annot., The Doctrine of Primary Administrative Jurisdiction As

Defined And Applied By The Supreme Court, 38 L.Ed.2d 796 (1974).

3. It has not been suggested that the jurisdiction of the state court over the activity in question has been pre-empted under the doctrine of *Teamsters Local 20 v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). See *Palm Beach Co. v. Journeymen's and Prod.,* 519 F.Supp. 705 (D.C.N.Y.1981).

*Construction Workers v. Laburnum Constr. Corp.*, 347 US 656, 98 L.Ed.2d 1025, 74 S.Ct. 833 (threats of violence); *Youngdahl v. Rainfair, Inc.*, 355 US 131, 2 L Ed 2d 151, 78 S Ct 206 (violence); *Automobile Workers v Russell*, 356 US 634, 2 L Ed 2d 1030, 78 S Ct 932 (violence); *Linn v Plant Guard Workers*, 383 US 53, 15 L Ed 2d 582, 86 S Ct 657 (libel); *Farmer v. Carpenters*, 430 US 290, 51 L Ed 2d 338, 97 S Ct 1056 (intentional infliction of mental distress). *Sears*, 436 U.S. at 194–195, 98 S.Ct. at 1756, 56 L.Ed.2d at 224.

*Sears* established another exception to that general statement of superiority. That case involved area standard picketing under circumstances similar to this case except in that case the union did not file an unfair labor practice charge with the N.L.R.B. After finding that trespass picketing could be arguably prohibited or arguably protected, the majority opinion held that nevertheless, the state court could determine if the same was protected and, if not, enjoin trespass picketing. Without attempting to analyze that opinion in detail, it is sufficient to note that it emphasized two factors. First, because the union had not filed a charge, if an injunction was not available, the property owner had no remedy other than self-help. The second was the state's interest in regulating activities that could lead to violence.[4] In a concurring opinion Justice Blackmun said the jurisdiction of the state court should be preempted if the union filed such a charge. Justice Powell also concurred and said whether or not the union files such a charge, the state court should have jurisdic-

tion to restrain the trespass. In so saying, he emphasized the need for speedy regulation to avoid violence and the power of the board to seek temporary relief against the state court action under 29 U.S.C. § 160(j).[5]

The question presented by these two concurring opinions and by this case has received but little attention since *Sears*. In *Black*, pickets had been threatened with arrest if they did not move the picket lines from the private property of a shopping center. The picket lines were moved and the union filed a charge with the N.L.R.B. Thereafter, trespass picketing resumed and the property owner obtained a temporary restraining order prohibiting picketing on the private property. The union initiated a prohibition proceeding in which the Eastern District of this Court, without expressly considering either of the concurring opinions mentioned above, adopted the result advocated by Justice Blackmun.

In *Shirley v. Retail Store Emp. U.*, 225 Kan. 470, 592 P.2d 433, 437 (1979), it was held:

> If, however, a union, after receiving from the employer or property owner a notice to cease picketing, files a complaint with the NLRB and the board takes jurisdiction, a Kansas district court has the power to enjoin trespassory picketing only where there is shown to be actual violence or a threat of immediate violence or some obstruction to the free use of property by the public that immediately threatens public health and safety or that denies to an employer or his customers reasonable ingress and egress to and from the employer's place of business.

---

4. The decision is analyzed and the general subject is annotated: Annot., State Injunction of Picketing, 56 L.Ed.2d 813, 819 (1974). Also see Jacobson, Union Trespass: Sears v. Carpenters and Labor Law Preemption, 40 U. of Pitt.L.Rev. 779 (1979); Richards, Labor Law, 32 Baylor L.Rev. 91 (1980); Andresen, Trespass to Enjoin Picketing, 15 Wake Forest L.Rev. 288 (1979); de Haven, Labor Law Preemption after Sears—Problems in Concurrent Jurisdiction—Wiggins & Co. v. Retail Clerks Local 1557, 47 Tennessee L.Rev. 373 (1980).

5. Also see Cox, Labor Law Preemption Revisited, 85 Harvard Law Review 1337, 1367 (1972); *Ford v. Boeger*, 362 F.2d 999 (8th Cir. 1966), U.S. cert. den. 386 U.S. 914, 87 S.Ct. 857, 17 L.Ed.2d 787 (1967), rehearing denied 386 U.S. 978, 87 S.Ct. 1160, 18 L.Ed.2d 140 (1967); second petition for rehearing denied 387 U.S. 949, 87 S.Ct. 2072, 18 L.Ed.2d 1341 (1967); *May Dept. Stores v. Teamsters Union Local No. 743*, 64 Ill.2d 153, 355 N.E.2d 7 (1976); *Lawson Milk Co. v. Retail Clerks U. Local 698*, 59 Ohio App.2d 207, 394 N.E.2d 312 (1977); *Ex Parte George*, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133 (1962).

On the other hand, it has been declared, "[t]he availability of such a civil remedy, however, does not serve to foreclose the State from enforcing its criminal and *quasi-criminal* laws relating to trespass when the facts warrant it". *State v. Dargon*, 165 N.J.Super. 500, 398 A.2d 891, 893 (1978). *Sears* was discussed and applied in *Florida Gulf Coast Bldg. Trades v. DeBartolo*, 392 So.2d 916 (Fla.App.1980). Other cases have recognized *Sears* as creating another exception to the general rule of *Garmon* without express consideration of the two concurring opinions. See *Collins v. Industrial Bear. & Transmission Co.*, supra; *Palm Beach Co. v. Journeymen's and Prod.*, 519 F.Supp. 705 (D.C.N.Y.1981); *Bukovac v. Daniel Const. Co.*, 469 F.Supp. 176 (D.C.Va.1979); *Kaplan's Fruit v. Superior Court*, 26 Cal.3d 60, 160 Cal.Rptr. 745, 603 P.2d 1341 (In banc 1979); *John Price Associates v. Utah State Conference*, 615 P.2d 1210 (Utah 1980). Pre-*Sears* opinions dealing with the question are *May Dept. Stores; Lawson Milk Co. v. Retail Clerks U. Local 698*, 59 Ohio App.2d 207, 394 N.E.2d 312 (1977). In his concurring opinion in *Taggart v. Weinacker's, Inc.*, 397 U.S. 223, 90 S.Ct. 876, 25 L.Ed.2d 240 (1970), Chief Justice Burger did not consider the presence or absence of such a charge in finding a state court had jurisdiction to enjoin trespass picketing.

However, this case cannot be affirmed on the basis of either concurring opinion in *Sears*. For the same reason even though *Black* is followed, it is not decisive. The

trial court in this case in its final judgment denied the plaintiff relief against trespass picketing because the union had filed a charge after the temporary injunction was issued. In effect, the circuit court held its jurisdiction had been permanently preempted. Even following the Blackmun concurring opinion, the jurisdiction acquired by the trial court was not permanently preempted. "Similarly, if a union timely files a § 8(a)(1) charge, *a state court would be bound to stay* any pending injunctive or damages suit brought by the employer until the Board has concluded, or the General Counsel by refusal to issue a complaint has indicated, that the picketing is not protected by § 7". *Sears*, (Blackmun concurring opinion) 436 U.S. at 209, 98 S.Ct. at 1764, 56 L.Ed.2d at 233.[6] (Emphasis Added). A similar rule is applicable in respect to the primary administrative jurisdiction doctrine.[7]

The final judgment of the trial court in this case denied the plaintiff relief against the trespass picketing. The decision of the Administrative Law Judge that such picketing was not protected by the N.L.R.A. points up this infirmity of the final judgment. That judgment must be set aside.[8] Upon remand, the parties may focus their attention upon the effect to be given to the decision of the Administrative Law Judge and when and in what form a final judgment is to be entered.[9]

**6.** "There is accordingly no further basis for pre-emption barring a state court injunction against picketing where the Board has in fact determined that the picketing is not covered by the Act." Annot., State Injunction of Picketing, supra, n. 4.

**7.** See *United States v. Western P. R. Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *International Brotherhood v. Hardeman*, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), reh. den. 402 U.S. 967, 91 S.Ct. 1607, 29 L.Ed.2d 132 (1971); Annot., Primary Administrative Jurisdiction, supra, n. 2.

**8.** Compare the case in which an injunction was reversed on appeal because the N.L.R.B. after the appeal was lodged, found the trespassory activity to be protected, even though that ruling was made upon a charge made by the property owner. *Florida Gulf Coast Bldg.*

*Trades v. DeBartolo*, 392 So.2d 916 (Fla.App. 1980). Compare *Collins v. Indus. Bear. & Transmission Co.*, 575 S.W.2d 875 (Mo.App. 1978) in which an affirmed decision of the N.L.R.B. was in part relied upon in permitting a discharged employee to proceed with an action for damages under the service letter statute.

**9.** In *Wiggins & Co. v. Retail Clerks Union*, 595 S.W.2d 802 (Tenn.1980) the court vacated an injunction upon the basis that the N.L.R.B. had determined the land owner was guilty of an unfair practice even though that decision was on appeal. Thereafter, the decision of the N.L.R.B. finding the trespass picketing to be protected was reversed and the case remanded to the N.L.R.B. *Giant Food Markets, Inc. v. N. L. R. B.*, 633 F.2d 18 (6th Cir. 1980). Compare

The remaining points of the plaintiff and defendants deal with the action of the trial court in refusing to grant or in granting various other aspects of injunctive relief. These points involve activities within other exceptions recognized in *Sears* and *Garmon*. No contention is made that the jurisdiction of the circuit court to regulate such activities peripheral to the actual picketing has been pre-empted. Basic to a review of these points is the rule that an injunction should not be granted solely because the activity in question is, in the abstract sense, of the type that may be properly enjoined. An injunction will normally be granted only against activities reasonably apprehended. *Fugel v. Becker*, 2 S.W.2d 743 (Mo. banc 1928); 42 Am.Jur.2d Injunctions § 4 (1969). Further, this court is to sustain the action of the circuit court unless there is no substantial evidence to support its judgment, the judgment is against the weight of the evidence or the court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). In considering the evidence, this court must give due regard to the ability of the circuit court to have judged the credibility of the witnesses. Rule 73.-01(c)(2). If no specific finding has been made thereon, any fact issue involved in any point must be considered as having been determined in accordance with the result reached. Rule 73.01(a)(2).

The plaintiff complains that the circuit court erred in not enjoining defendants from calling its customers "scabs" or "scab shoppers". There was evidence of such name calling in other labor disputes involving the defendant union. However, there was no evidence that this was done or threatened during the picketing in question. The circuit court correctly denied such relief.

The plaintiff's next point is that the trial court erred in not enjoining the defendants from taking the license numbers of customers. An injunction is proper to prevent the harassment and intimidation of customers. *Youngdahl v. Rainfair*, supra; *Katz Drug Co. v. Kavner*, 249 S.W.2d 166 (Mo.1952); *PTA Sales v. Retail Clerks Local No. 462*, 96 N.M. 581, 633 P.2d 689 (1981). There was undisputed evidence that the defendants did take such license numbers. There was also evidence that such action did intimidate those customers. Such actions should be enjoined. Dover Corporation, 211 N.L.R.B. 98, 86 L.R.R.M. 1607 (1974).

The defendants' first point is that the trial court erred in enjoining their use of any false or misleading statements to wrongfully disparage the plaintiff in connection with its business in Springfield. The injunction specifically prohibits any reference to the fact that the plaintiff is not a Missouri corporation located in Springfield. The defendants contend they made no false and misleading statement and disclaim any intention to do so. The plaintiff initially sought this relief on two bases. The first was defendant Gray's public statement that the plaintiff did not provide wages and working conditions similar to those provided for by the defendant union's contracts with other stores in the Springfield area. When its payroll and personnel records were subpoenaed, the plaintiff withdrew this basis for such relief.

The second basis was a reference on the initial picket sign to "Smitty's Markets of Phoenix, Arizona". Picketing is more than free speech. *International Brotherhood v. Vogt*, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957). The use of false statements made through picketing may be properly enjoined. *Farah Mfg. Co. v. Amalgamated Clothing Wkrs.*, 483 S.W.2d 271 (Tex.Civ.App.1972); 48A Am. Jur.2d Labor and Labor Relations, § 2078 (1979). Compare *May Furnace Company v. Conaway*, 352 S.W.2d 40 (Mo.App.1961) and *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362 (Mo.App.1973). In fact the plaintiff is and was a Missouri

---

*Hanna Min. Co. v. District 2, M. E. B. A.*, 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965).

Also see 29 U.S.C. § 164(c)(1) (1975).

corporation. However, an Iowa corporation owns and operates a chain of supermarkets under the name of "Smitty's" in Phoenix, Arizona. At the time in question, the plaintiff was owned and operated by those who owned and/or had worked for the Iowa corporation in Phoenix, Arizona. The use of the picket sign in question was preceded by two newspaper articles that a Phoenix, Arizona, chain would open a Smitty's store in Springfield. The language complained of was on picket signs carried for about one-half day in September, 1977. It was not repeated in future picketing. The evidence does not support that part of the injunction complained of under this point. *State ex rel. Danforth v. Independence Dodge, Inc.*, supra; *Solien v. Teamsters Local No. 610*, 484 F.Supp. 1240 (D.C.Mo. 1980).

■ The defendants' next point complains about that portion of the judgment which enjoined them, while engaged in picketing, from parking motor vehicles on the parking lot. They argue such parking is incidental to the picketing and does not harm the plaintiff. Cases involving balancing of interests such as in granting an injunction for the removal of an encroachment, see *Blumenberg v. Minton*, 507 S.W.2d 26 (Mo.App.1974), are not applicable. The attributes of private property have been reaffirmed in *Hudgens v. N.L. R.B.*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), which expressly overruled the doctrine set forth in *Food Employees Union, Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). Compare *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *Hutzler Bros. Co. v. N.L.R.B.*, 630 F.2d 1012 (4th Cir. 1980). "But there is an obvious distinction between injury and damage, which is not always observed in dealing with the question of injunctive relief. Whatever invades a man's right of dominion over his property is

a legal injury, whether damage ensues or not." 42 Am.Jur.2d Injunctions § 29 (1969). Even if the defendants had met their heavy burden to establish a right to picket while trespassing, referred to in *Sears*, that did not include the right to park on private property. The defendants were properly enjoined from doing so. *Winslow v. Sauerwein*, 285 S.W.2d 21 (Mo.App.1955).

■ The plaintiff offered and the court received evidence concerning occurrences in picketing during strikes which involved the defendant union in 1974, 1975 and 1977. The defendants urged this was error. Portions of this evidence had probative value as some of the individuals involved in the other occurrences participated in picketing in this case.[10] However, it is not necessary in this opinion to analyze and rule upon this evidence in detail. "A trial court, sitting without a jury, is given greater latitude in the admission of evidence, as it is assumed the trial judge will not give weight to incompetent evidence." *Pike v. Pike*, 609 S.W.2d 397, 403 (Mo. banc 1980). Also see *In Interest of A. R. S.*, 609 S.W.2d 490 (Mo.App.1980).

■ The defendants' next point is that the circuit court erred in enjoining threats of physical violence, mass picketing, harassment, name calling or other intimidation because there is no evidence to support the same. The same contention is made about the obstruction of the passage of customers and their vehicles. The testimony relative to these points presented by the plaintiff included the following. One of the defendants' members challenged an employee of the plaintiff. Pickets were observed waving signs and yelling at customers and impeding the movement of their vehicles. One customer testified that while driving past a picket he felt a thump on his car. While the defendants presented evidence to the contrary, as noted, this court is admonished to respect the determination of the

---

**10.** "Proof of the commission of an act by proof of the commission of other similar acts is not forbidden, but to be admissible, evidence of collateral acts must have relevancy and cogency as proof of the main issue sufficient to outweight the possible confusion of issues and prejudice to the rights of the adverse party which may result from its introduction." *Hawley v. Merritt*, 452 S.W.2d 604, 611 (Mo.App. 1970).

credibility of the witnesses by the circuit court. In the *Matter of Roth*, 603 S.W.2d 70 (Mo.App.1980). This determination was in favor of the evidence presented by the plaintiff. Cases cited holding that similar evidence did not justify an injunction against all peaceful picketing, such as *Missouri Cafeteria v. McVey*, 362 Mo. 583, 242 S.W.2d 549 (banc 1951) and *Angle v. Owsley*, 332 S.W.2d 457 (Mo.App.1959) are not controlling. Even though the offensive aspects of picketing do not rise to the level required by *Milk Wagon Drivers U. v. Meadowmoor Dairies*, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941), to enjoin all picketing, a court may properly enjoin the offensive aspects of picketing. *Ford v. Boeger*, 362 F.2d 999 (8th Cir. 1966); *PTA Sales v. Retail Clerks Local No. 462*, supra; *Farah Mfg. Co. v. Amalgamated Clothing Wkrs.*, supra. These aspects include threats, intimidation and obstruction of access. *Ford v. Boeger*, supra; *Katz Drug Co. v. Kavner*, supra; *PTA Sales v. Retail Clerks Local No. 462*, supra. With the exception of the reference to picketing in the store, there was evidence to support this portion of the injunction complained of and the same must be sustained. *Murphy v. Carron*, supra.

The defendants point that the injunction, because it is improperly worded and too vague, is not valid. Similar judgments have been approved and enforced. *Ramsey v. Grayland*, 567 S.W.2d 682 (Mo.App.1978); *Eads Coal Co. v. United Mine Wkrs. of Amer., Dist. 12*, 27 Ill.App.3d 692, 327 N.E.2d 115 (1975); *M Restaurants, Inc. v. San Francisco Local*, 124 Cal.App.3d 666, 177 Cal.Rptr. 690 (1981). There was evidence the plaintiff leased the premises and testimony from which the trial court could reasonably find those premises included the parking lot. Contrary to the defendants' contention, this was sufficient to support the conclusion of the trial court that the plaintiff had the right to control the parking lot. This court need not pass upon the issue of costs as the case is not concluded. The judgment of the trial court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

HOGAN, BILLINGS and FLANIGAN, JJ., concur.

PREWITT, P. J., disqualified.